**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| DEBORAH ANN COLLINS, individually and on behalf of a class of all persons and entities similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>GAMBALE INSURANCE GROUP, INC., and DIRECT CONSENT LLC,<br><br>*Defendants.* | Civil Case No.:<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

# CLASS ACTION COMPLAINT

## PRELIMINARY STATEMENT

1. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from

telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*...This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have

suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. Plaintiff Deborah Ann Collins ("Plaintiff") brings this action under the TCPA alleging that Direct Consent LLC ("Defendant Direct Consent" or "Direct Consent") made telephone calls to her, at the direction of and selling the products of Gambale Insurance Group, Inc. ("Defendant Gambale" or "Gambale"). Like Plaintiff, recipients of these calls were listed on the National Do Not Call Registry and did not provide the requisite consent to be contacted by Defendants.

4. Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

5. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**PARTIES**

6. Plaintiff is a resident of The Villages, Florida which is located within this District.

7. Defendant Gambale is headquartered in Martin County, Florida.

8. Defendant Direct Consent is headquartered in Sheridan County, Wyoming.

## JURISDICTION AND VENUE

9. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

10. This Court has personal jurisdiction over both Defendants because they placed calls into this District.

11. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the calls to the Plaintiff were sent into this District.

## THE TELEPHONE CONSUMER PROTECTION ACT

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

13. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

15. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**FACTUAL ALLEGATIONS**

16. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17. Defendant Gambale sells insurance and uses telemarketing calls to promote its products and plans to consumers.

18. Gambale hires third-party companies like Defendant Direct Consent to make calls on its behalf in order to generate leads.

19. Plaintiff's telephone numbers is a non-commercial telephone number and is not associated with any business.

20. The number is used for personal residential purposes.

21. Plaintiff's telephone number has been listed on the National Do Not Call Registry since October 31, 2004.

22. Plaintiff has never been a customer of either of the Defendants nor asked or inquired to be a customer of the Defendants.

23. Plaintiff never consented to receive calls from Defendants.

24. Plaintiff never did business with Defendants.

25. Despite that, Plaintiff received at least six telemarketing calls from Defendants to her cellular telephone number.

26. Defendant Direct Consent, at Defendant Gambale's direction, placed calls to Plaintiff from "spoofed" telephone numbers.

27. The calls were made to Plaintiff from April 4 to October 15, 2025.

28. All of the calls were automatically dialed from (303) XXX-XXXX telephone numbers.

29. Plaintiff answered the first three calls on April 17, April 18, and July 18, 2025.

30. On each of the calls the caller identified itself as being from "Allstate" and Plaintiff stated she was not interested.

31. Plaintiff answered the fourth call on September 8, 2025.

32. Again, the caller stated they were from Allstate.

33. Plaintiff received two additional calls from Defendants on October 7 and October 15, 2025.

34. The caller again stated they were from Allstate.

35. During the September and last October 2025 call, the Plaintiff provided her e-mail addressed to understand who continued to call her illegally.

36. In response, the Plaintiff received multiple e-mail quotes from the Gambale defendant following the telemarketing calls.

37. Indeed, the quote sent to the Plaintiff identifies "Patrick Gambale" as the owner of the agency and Robert Hollingsworth as the sales producer.

38. Both work for the Defendant.

39. After the Plaintiff's counsel wrote a letter regarding the calls, Direct Consent identified itself as responsible for making the calls.

40. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

41. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

42. The FCC has instructed that sellers such as Defendant Gambale may not avoid liability by hiding behind third party agents and outsourcing telemarketing to third parties, such as Defendant Direct Consent:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

43. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

44. Defendant Gambale is liable for Defendant Direct Consent's conduct and telemarketing calls placed by Direct Consent.

45. The calls were transferred by Direct Consent to Gambale to generate customers for Gambale and its agents, including Plaintiff.

46. Direct Consent was clearly hired by Gambale as a generator to make phone calls to potential customers, vet potential clients, and sell them the interested ones.

47. Gambale hired Direct Consent to orchestrate an *en masse* telemarketing campaign.

48. The aforementioned calls to the Plaintiff were unwanted.

49. The calls were nonconsensual encounters.

50. The calls were made in an attempt to sell insurance plans.

51. Plaintiff's privacy has been violated by the above-described telemarketing calls

52. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION STATEMENT

53. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

54. Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

55. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Direct Consent National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.
>
> **Gambale National Do Not Call Registry Sub-Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Gambale or a third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

56. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

57. Excluded from the Classes are counsel, Defendants, and any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

58. Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

59. This Class Action Complaint seeks injunctive relief and money damages.

60. The Classes as defined above, are identifiable through Defendants' dialer records, other phone records, and phone number databases.

61. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

62. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

63. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

64. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

65. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

a. Whether Defendants made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

b. Whether Defendants made calls using artificial or prerecorded voices to Plaintiff and members of the Robocall Class;

c. The corresponding degrees and liability as among and between Defendants;

d. Whether Defendants' conduct constitutes a violation of the TCPA; and

e. Whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

66. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

67. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

68. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents.

69. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

70. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**FIRST CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the Direct Consent National Do Not Call Registry Class and the Gambale National Do Not Call Registry Sub-Class)**

71. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

72. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

73. Defendants' violations were negligent, willful, or knowing.

74. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C.

§ 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

75. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B. That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation;

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and

appointing the lawyers and law firms representing Plaintiff as counsel for the Classes; AND

D. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Date: November 6, 2025.

PLAINTIFF, individually and on behalf of a class of all persons and entities similarly situated,

/s/ Avi R. Kaufman
Avi R. Kaufman (FL Bar no. 84382)*
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
Kaufman P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

**Lead Counsel*

*Attorneys for Plaintiff and the putative Classes*